# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANGEL MICHELLE GIOGLIO,

      Defendant-Appellant.

UNPUBLISHED
November 13, 2014

No. 317360
Kent Circuit Court
LC No. 12-009445-FH

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant, Angel Gioglio, appeals as of right her jury trial conviction of one count of uttering and publishing, MCL 750.249. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 6 to 40 years' incarceration for her conviction, with credit for 44 days of time served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's conviction arises out of a forged check that she presented for deposit. On January 22, 2012, Wendy Arntz went to a mall to walk for exercise. When she arrived, she placed the keys to her car in her sweatshirt and hung the sweatshirt in a coatroom inside the mall. Unbeknownst to Arntz, defendant followed her into the mall, took the keys from inside the sweatshirt, and used the keys to break into Arntz's vehicle. Once inside the vehicle, defendant stole Arntz's purse, which contained, among other items, Arntz's checkbook.

Approximately four days later, defendant agreed to rent several rooms from David Skirvan. Defendant did not immediately give him a security deposit or money for rent, but she assured Skirvan that she would pay him shortly. On February 3, 2012, defendant went to a Chase Bank branch inside of a Meijer store and deposited a check for $1,500 into Skirvan's account. The check was written from Arntz's checking account. Defendant admitted that she deposited the check but testified that Skirvan gave her the check for $1,500 from Arntz's account and asked her to "drop it off for him while he used the bathroom" in the Meijer store. However, Skirvan testified that he did not ask defendant to deposit the check into his account and that he had "nothing" to do with depositing the check at issue. In addition, Arntz and her husband testified that that they did not know Skirvan before the initiation of this case and that they never gave anyone permission to write a check from their account to Skirvan. The teller at the bank where defendant deposited the check confirmed that Skirvan was not with defendant at the time

-1-

the check was deposited, and that defendant did not have Skirvan's account information, so she had to look up his account information to deposit the check.

After defendant moved into his home, Skirvan began to experience issues with his personal belongings and financial affairs. On February 6 or 7, 2012, he attempted to use his debit card to purchase groceries but was told that his account was frozen because of fraudulent activity. On February 8, 2012, he noticed that four checks were missing from his checkbook. He found one of these checks written for $50 to "Angel Gioglio Cleaning Services." When Skirvan confronted defendant, she denied writing the check, and he contacted the Kent County Sheriff's Department on February 8, 2012. That same day, defendant moved out of Skirvan's home at his request. After defendant moved out of Skirvan's home, he learned that his credit card account had been "maxed out" and closed, and his email and Facebook accounts had been closed "due to suspicious activity." Skirvan had let defendant use his laptop computer because she said she needed it for work purposes. Skirvan also testified that shortly after defendant moved into his home, he noticed that several items were missing from his home, including sterling silver coasters, kitchen utensils, crystal ashtrays, and an expired Michigan identification card, but he initially thought he had simply misplaced these items. In addition, Skirvan testified that after defendant moved out of his home, he went through the area where she had stayed and found Arntz' checkbook hidden in a closet in the upstairs of the home. At trial, defendant denied stealing any items from Skirvan or possessing Arntz's checkbook.

In approximately mid-February 2012, Arntz was walking at the same mall where she had been at the time her purse was stolen. Defendant approached her and inquired if her purse had been stolen from the mall. Arntz confirmed that it had, and defendant stated that she also had her purse stolen from the mall. Defendant told Arntz that the person who stole their purses "ended up being caught" and "went to prison." Arntz testified that she was "suspicious" of defendant at first, but defendant continued to engage her in conversation; defendant told Arntz that she "looked familiar" to her and the women tried to determine how they knew each other. Arntz also testified that defendant inquired whether she had replaced her driver's license. At trial, defendant denied ever speaking to Arntz.

Defendant also testified that she and Skirvan agreed that she would provide cleaning services to Skirvan in exchange for use of a room. However, at trial, the prosecution introduced as an exhibit an email from defendant to a man named Ron Roloff dated February 5, 2012, in which defendant stated that she was renting a room, and "they got paid" for the room. Despite the fact that this email was sent from an email account that defendant admitted was hers, defendant denied "ever hear[ing]" of Roloff. Defendant also testified that Skirvan was "interested in pursuing other things besides room and board," and requested that she be his "companion." When she refused and indicated that she was seeing someone, Skirvan told her that she was "no longer welcome in his home" because she was "dating a different race." Defendant admitted that she had two prior uttering and publishing convictions.

The jury convicted defendant. At sentencing, defendant admitted that she had stolen Arntz' checkbook and committed the charged offense.

## II. EVIDENTIARY ISSUE AND CONSTITUTIONAL CLAIMS

Defendant's first argument on appeal is that the trial court erred when it excluded evidence of an email that Skirvan allegedly sent to defendant; the trial court's ruling was based on defendant's failure to disclose this email as required by the trial court's pretrial scheduling order and MCR 6.201. Defendant argues that the email was relevant to show Skirvan's lack of credibility and bias and that exclusion of this evidence denied defendant her constitutional rights to present a defense and of confrontation.

Defendant preserved her evidentiary issue by challenging the trial court's exclusion of the email. We review the trial court's exclusion of the evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). This Court also reviews a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion. *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). Defendant did not preserve her constitutional claims, as she raises them for the first time on appeal. We review these unpreserved constitutional claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). Pursuant to this standard of review, a defendant must show the existence of a plain (clear or obvious) error and must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* at 763. Even when there is a showing of plain error affecting substantial rights, reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (citations and quotation marks omitted).

MRE 402 provides that all relevant evidence is generally admissible. Pursuant to MRE 401, relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence is relevant if it affects the credibility of a witness, and "the jury is generally entitled to weigh all evidence that might bear on the truth or accuracy of a witness's testimony." *King*, 297 Mich App at 476-477. Likewise, evidence of a witness' bias is "always relevant," and "[a] defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony." *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005) (citation and quotation omitted). However, relevant evidence may be excluded if it is offered in violation of a discovery order or the rules of discovery. *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 456 n 10; 722 NW2d 254 (2006).

Discovery in a criminal case is governed by MCR 6.201. Upon the request of an opposing party, a party must provide "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request." MCR 6.201(A)(6). Further, MCR 6.201(F) provides that unless otherwise ordered by a trial court, "a defendant must comply with the requirements of this rule within 21 days of a request under this rule[,]" and MCR 6.201(H) imposes on all parties a continuing duty to disclose evidence. MCR 6.201(J) addresses violations of this discovery rule, and provides that if a party fails to comply with the court rule, a trial court may, in its discretion, prohibit the party from introducing into evidence the material not disclosed. In addition, this Court has held that if a party violates MCR 6.201 or a discovery

order, the trial court has discretion to fashion an appropriate remedy, which "involves a balancing of the interests of the courts, the public, and the parties[,]" and requires an inquiry into all the relevant circumstances, including the cause of the noncompliance and whether the party objecting to the evidence can establish prejudice. *Rose*, 289 Mich App at 525-526.

In the present case, the trial court entered a pretrial scheduling order that ordered the parties to comply with the requirements of MCR 6.201, and the prosecution filed a request for discovery. The email in question was not disclosed as required. During the third day of trial and on redirect examination of defendant, the final witness, the defense attempted to introduce the email as an exhibit. Defendant knew about the email before trial and the decision not to identify the email as an exhibit before trial can be viewed as nothing other than a matter of trial strategy. See *People v Lucas*, 193 Mich App 298, 303; 484 NW2d 685 (1992) ("The closer to the date of trial the evidence is offered, the more this factor suggests wilful misconduct designed to create a tactical advantage and weighs in favor of exclusion."). Defendant had previously agreed to dismiss Skirvan as a witness, and there was a question about how long it would take to locate Skirvan and recall him to question him about the email, or whether it was even possible to do so. In addition, defendant had ample opportunity to cross-examine Skirvan on issues of credibility and bias, including the email in question, if counsel so chose. Considering all of the relevant circumstances, the trial court did not abuse its discretion when it found that the late attempt to utilize this evidence, which was not produced in discovery, prejudiced the prosecution and therefore warranted exclusion. *Rose*, 289 Mich App at 525-526; *Lucas*, 193 Mich App at 303. In so ruling, we note that despite the exclusion of this evidence, defendant presented her theory of the case to the jury, which was that Skirvan was not credible and that he had given her the $1,500 check to deposit into his account. In addition, we note that the evidence against defendant was compelling. Security video from the mall showed an individual who matched defendant's description enter the coatroom, leave shortly thereafter and enter Arntz's vehicle, and then leave in a vehicle that matched the description of defendant's vehicle. In addition, defendant admitted to depositing a check from Arntz into Skirvan's bank account, and Skirvan and Arntz testified that they did not know each other. Two days after depositing the check, defendant sent an email to an acquaintance in which she stated that she "paid" someone for her rent. Furthermore, Skirvan testified that, after defendant left his house, he found Arntz's checkbook in his house. And, less than a month after Arntz's checkbook was stolen, defendant approached Arntz, told Arntz that she knew that the checkbook had been stolen, that defendant's purse had been stolen as well, and that the perpetrator of both offenses had been apprehended. Therefore, even assuming the trial court abused its discretion by excluding the evidence, defendant would not be entitled to relief. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (internal quotation marks omitted) (explaining that "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.").

Because the trial court did not abuse its discretion when it excluded the evidence, defendant was not denied her right to present a defense. See *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (explaining that a defendant's right to present a defense is not absolute, and that the defendant must comply with procedural and evidentiary rules). In addition, we find meritless defendant's assertion that she was denied her right to confrontation. The record reveals that defendant had the opportunity to cross-examine Skirvan about facts from

which his bias, prejudice, or lack of credibility might be inferred. In addition, there is no indication in the record that trial counsel was unable to question Skirvan about the email in question; rather, it appears trial counsel chose not to pursue this line of questioning during cross-examination of Skirvan. Therefore, exclusion of this evidence did not deny defendant her constitutional right to confront Skirvan. See *People v Gaines*, ____ Mich App ____, ____; ____ NW2d ____ (Docket Nos. 310367, 310368, and 310369, issued August 5, 2014); slip op at 14 (citation omitted).

Defendant also argues that her trial counsel was ineffective because she failed to timely disclose the email that Skirvan allegedly sent to defendant, which resulted in the exclusion of this evidence, and because she failed to effectively challenge Skirvan's credibility. Defendant did not move for a new trial or for a *Ginther*[1] hearing, and this Court's review is "limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A defendant has the burden of proving ineffective assistance of trial counsel, and to do so, "the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Id*. at 80-81. To establish that she was prejudiced, a defendant must show that "but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81. Trial counsel's decisions regarding what evidence to present are generally presumed to be a matters of trial strategy, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008), and trial counsel has wide discretion as to matters of trial strategy, *Heft*, 299 Mich App at 83. The fact that a strategy does not work does not render counsel's performance objectively unreasonable. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

The record establishes that if defendant had identified the email as an exhibit before trial, the prosecution would have questioned Skirvan about the email during his direct examination, and Skirvan would have likely testified that defendant stole his email passwords and that she sent the email to herself from his email account. Moreover, at trial the prosecution admitted evidence to establish that defendant lied about at least one other email. In other words, if defendant had identified the email as an exhibit before trial, the prosecution could have used the email to discredit *defendant*. Therefore, the record supports a finding that trial counsel's initial decision not to utilize the email as an exhibit was a matter of trial strategy, *Horn*, 279 Mich App at 39. The fact that this strategy did not work does not render counsel's performance objectively unreasonable. *Petri*, 279 Mich App at 412. In addition, defendant's trial counsel used several lines of questioning in an attempt to impeach Skirvan and attack Skirvan's credibility at trial. Trial counsel's decisions regarding how to attack the credibility of Skirvan (including whether to identify the email as an exhibit before trial) were a matter of trial strategy, and the record does not establish that defense counsel's performance in this regard was so deficient that it fell below an objective standard of reasonableness. *Heft*, 299 Mich App at 81, 83.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## III. SENTENCING DEPARTURE

Defendant also argues that the trial court abused its discretion when it departed from the statutory sentencing guidelines. The trial scored defendant's minimum sentence guidelines at 10 to 46 months and departed from the guidelines by sentencing defendant to a minimum of six years (72 months). The trial court gave two reasons for its departure: (1) defendant was a "pathological liar" who "had a story for everything;" and (2) defendant engaged in predatory conduct, both before and after the uttering and publishing offense, because she "scope[d]" out Arntz before the offense and because she went to the mall and spoke with Arntz after the offense, talking with her about the theft of her purse and claiming that the perpetrator had been apprehended. The trial court stated that these factors were objective and verifiable and that they were not adequately considered under the guidelines.

Defendant argues that she is entitled to resentencing because the fact that she lied was not a substantial or compelling reason for departing from the guidelines.[2] In reviewing a departure from the guidelines range, the existence of a particular factor is a factual determination subject to review for clear error. *People v Anderson*, 298 Mich App 178, 184; 825 NW2d 678 (2012). The determination that the factor is objective and verifiable is reviewed de novo as a matter of law. *Id*. And, the determination that a factor constituted a substantial and compelling reason for departure is reviewed for an abuse of discretion. *Id*. An abuse of discretion exists when the decision is not within the range of principled outcomes. *Id*. In addition, the amount of the departure is also reviewed for an abuse of discretion. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

A court may depart from the recommended minimum sentencing range under the legislative guidelines if it has a substantial and compelling reason to do so and states on the record the reasons for departure. MCL 769.34(3); *Anderson*, 298 Mich App at 183. "In order to be substantial and compelling, the reasons on which the trial court relied must be objective and verifiable." *Anderson*, 298 Mich App at 183 (citation and quotation omitted). "To be objective and verifiable, a reason must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed." *Id* (citation and quotation omitted). A trial court's reason for departure is objective and verifiable when it relies on testimony in the record. *Id.* at 185. A trial court may not base a departure on an offense or offender characteristic already taken into account in the guidelines unless the court finds that the characteristic has been given inadequate or disproportionate weight. *Id.* at 183-184. And, to constitute a substantial and compelling reason to justify departure, a court should recognize the reason as being "of considerable worth" in deciding the length of a sentence. *Anderson*, 298 Mich App at 183. Further, a trial court must insure that a departure renders the sentence

---

[2] In making her argument, defendant does not raise an argument with regard to the trial court's conclusion that her predatory conduct, before and after the offense, was a substantial and compelling reason for departure, or that this reason was not adequately considered by the guidelines.

proportionate to the seriousness of defendant's conduct and her criminal history. *Smith*, 482 Mich at 300.

In *People v Kahley*, 277 Mich App 182, 188; 744 NW2d 194 (2007), this Court held that the fact that a defendant committed perjury was objective and verifiable because the defendant admitted at his sentencing that he lied to the jury and that he committed the offenses. In addition, the *Kahley* Court found that the fact that the defendant committed perjury, when combined with another objective and verifiable reason for departure, constituted a substantial and compelling reason for a significant departure from the sentencing guidelines.[3] *Id*. at 188, 191. See also *People v Houston*, 448 Mich 312, 324; 532 NW2d 508 (1995) ("In imposing sentence, a trial court may consider a defendant's own perjury where there is a rational basis in the record for concluding that the defendant wilfully made a flagrantly false statement on a material issue.")

In the present case, during trial, defendant denied taking Arntz's checkbook or committing the charged offense. However, defendant admitted in a letter to the trial court that was read at sentencing that she stole the checkbook and that she committed the charged offense. The fact that defendant committed perjury at least two times during the trial was objective and verifiable and an issue of considerable worth in deciding defendant's sentence. *Houston*, 448 Mich at 324; *Kahley*, 277 Mich App 188. In addition, the fact that defendant committed perjury was not already taken into account by the sentencing guidelines in determining the appropriate sentence. Therefore, defendant's acts of perjury could support an upward departure if combined with another substantial and compelling reason for departure. *Kahley*, 277 Mich App at 188, 191. Here, the trial court also identified defendant's repeated predatory conduct as a second reason for its decision to depart upward from the sentencing guidelines. Defendant does not challenge this decision on appeal and the record contains ample support for the trial court's finding that defendant engaged in several acts of predatory conduct. Notably, defendant targeted Arntz before the offense and continued to target and harass her after the offense by returning to the mall and approaching her, inquiring about the theft of her purse, claiming that hers was also stolen, representing that the person who stole her purse had been apprehended, and inquiring whether Arntz had replaced her stolen driver's license.[4] Defendant's perjury and predatory conduct, taken together, are of considerable worth and constitute substantial and compelling reasons for departure. See *Kahley*, 277 Mich App at 188, 191; *Anderson*, 298 Mich App at 184.

---

[3] This Court noted that, by itself, perjury would not be sufficient to constitute a substantial and compelling reason for departure because, otherwise, "a departure might be warranted every time a defendant testified and was found guilty." *Id*.

[4] Although not challenged by defendant, we note that while offense variable (OV) 10, MCL 777.40, authorizes the trial court to score 15 points for predatory conduct, it is limited to "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). Here, the trial court based its decision to depart, at least in part, on defendant's predatory conduct *after* the sentencing offense. This conduct is expressly excluded from consideration when scoring OV 10.

Turning to the proportionality of the departure, we reject defendant's cursory challenge that the trial court failed to render a proportionate sentence. "The requirement that the trial court justify the extent of the departure is not overly burdensome. The court need only reasonably comply with the statutory articulation requirement in order to facilitate appellate review." *Smith*, 482 Mich at 315. Here, the trial court reasonably complied with its obligation by highlighting the seriousness of defendant's offense and opining that the recommended minimum guidelines range was not sufficient in this case, in light of defendant's actions. The trial court explained that the sentence it imposed was more proportionate under the circumstances. We find the trial court did not abuse its discretion. See *Smith*, 482 Mich at 304 ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been.").

Because there is no error in defendant's sentence, defendant is not entitled to resentencing, and her request for reassignment to a different judge on remand is moot. *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004) ("An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy.").

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

-8-