PEOPLE v CATHEY

Docket No. 244626. Submitted February 4, 2004, at Grand Rapids. Decided April 6, 2004, at 9:00 A.M. Leave to appeal sought.

Jason W. Cathey pleaded guilty in the Ottawa Circuit Court of criminal sexual conduct in the third degree. The court, Edward R. Post, J., sentenced the defendant to 36 to 180 months of imprisonment, to be served concurrently with a sentence of 51 to 180 months of imprisonment for a conviction of third-degree CSC in another case. At sentencing, the court had rejected the prosecution's contention that ten points should be scored under Offense Variable 3 (physical injury to victim), MCL 777.33, because the fifteen-year-old victim gave birth to a child as a result of the defendant's crime. The Court of Appeals, HOLBROOK, JR., P.J., and O'CONNELL and OWENS, JJ., in an order issued on June 14, 2002, denied the prosecution's application for leave to appeal (Docket No. 238990). The Supreme Court, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted the issues whether pregnancy is a bodily injury within the meaning of OV 3 and whether the rule of *People v Woods*, 204 Mich App 472 (1994), remains in effect under the legislative sentencing guidelines. 467 Mich 898 (2002).

The Court of Appeals *held*:

1. The scoring issue is not moot. The defendant's counsel conceded at oral argument that the defendant's sentence would be affected if the Court of Appeals were to determine that pregnancy is a bodily injury under OV 3. More importantly, the Supreme Court required the Court of Appeals to address the issue. Finally, the defendant offered no authority in support of his assertion that the issue is moot.

2. Under *Woods* and the case on which *Woods* relied, *People v Sargent*, 86 Cal App 3d 148 (1978), a pregnancy that results from criminal sexual conduct constitutes a bodily injury.

3. The Legislature, in drafting OV 3, carried forward the term "bodily injury" from OV 2 of the judicial sentencing guidelines and was presumably aware that "bodily injury" under OV 2 was construed in *Woods* to include pregnancy resulting from criminal conduct.

4. Even without the authority of *Woods*, bodily injury in the context of a criminal sexual conduct case includes pregnancy. "Bodily injury" is defined in a dictionary as physical damage to a person's body. By necessity, a woman's body suffers physical damage when carrying a child through delivery as the body experiences substantial changes to accommodate the growing child and to ultimately deliver the child.

5. Although "personal injury" under MCL 750.520a is defined to include both "bodily injury" and "pregnancy," the two are not mutually exclusive.

Trial court decision on OV 3 reversed and case remanded for further proceedings.

MURPHY, J., dissenting, stated that the majority incorrectly relied on *Woods*, which interpreted the judicial sentencing guidelines, not the legislative sentencing guidelines involved in this case. "Bodily injury" is not defined in OV 3 or anywhere in the legislative sentencing guidelines. Dictionaries define "bodily injury" as physical damage to a person's body, and "injury" as harm or damage done or sustained. Pregnancy cannot be equated to harm or damage to the body. The creation of new life, innocent of any wrongdoing, cannot be designated as damage unless the Legislature has clearly expressed such an intent. Under a textual reading of the statute, the Legislature did not intend for "bodily injury," as used in MCL 777.33, to include pregnancy.

SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLES — PHYSICAL INJURY TO VICTIM — CRIMINAL SEXUAL CONDUCT — PREGNANCY.

Pregnancy that results from being a victim of criminal sexual conduct is bodily injury to the victim within the meaning of Offense Variable 3 of the sentencing guidelines (MCL 777.33).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Ronald J. Frantz*, Prosecuting Attorney, and *Jon Hulsing*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Anne Yantus*) for the defendant on appeal.

Before: MURRAY, P.J., and MURPHY and MARKEY, JJ.

MURRAY, P.J. By order of our Supreme Court we consider as on leave granted the issues of "[1] whether pregnancy is a bodily injury within the meaning of Offense Variable 3, MCL 777.33, and [2] whether the rule of *People v Woods,* 204 Mich App 472 [517 NW2d 239] (1994), remains in effect under the legislative guidelines, MCL 777.1 *et seq." People v Cathey,* 467 Mich 898 (2002). We answer affirmatively to both questions and, therefore, reverse the lower court and remand for proceedings consistent with this opinion.

### I. FACTS AND LOWER COURT PROCEEDINGS

Defendant, aged nineteen at the time, was charged with criminal sexual conduct (CSC) in two cases, one involving a fifteen-year-old (the instant case) and the other involving a twelve-year-old. Pursuant to a plea agreement, one count of first-degree CSC in one case was dismissed, and defendant pleaded guilty of third-degree CSC in each case. As a result of defendant's conduct related to his third-degree CSC conviction in this case, the fifteen-year-old victim became pregnant and gave birth to a child.

During sentencing, the prosecution argued that ten points should be scored under Offense Variable (OV) 3, physical injury to victim, because the resulting pregnancy constituted a "bodily injury" as defined by case law. Defendant responded that the presentence report scored OV 3 at zero, that the pregnancy was not an injury but a "normal condition that results from intercourse," and that the Legislature would have given specific guidelines had it intended for pregnancy to be considered a bodily injury under the sentencing guidelines.

In refusing to score any points for OV 3 because of the victim's pregnancy, the trial court stated:

With respect to physical injury, I think the prosecutor makes an excellent argument, and certainly there is some case law that would suggest that at least in terms of the criminal sexual conduct statute pregnancy can be a personal injury.

However, under the context of the sentencing guideline manuals, it would have been very easy for the legislature to have included that, and instead they chose the term physical injury. They did not include in that definition of physical injury pregnancy.

I believe that it is the legislation's [sic] role to determine the definition of these terms. And when the legislature uses a term like physical injury, I am not sure that that clearly encompasses pregnancy.

If that was their intent, they certainly could have said so. And I think it is the judicial role to refrain from acting on these matters.

So I will leave it to the legislature to determine whether or not they wish pregnancy to be included as a physical injury and, certainly would encourage the prosecutor to consider seeking appellate review on the decision.

But I do not find that pregnancy falls within the definition of physical injury as used in the Offense Variable 3.

Under the trial court's scoring, defendant's guidelines range was thirty-six to sixty months' imprisonment. Ultimately, in the instant case, defendant was sentenced to 36 to 180 months' imprisonment, which sentence is to be served concurrently with his sentence of 51 to 180 months' imprisonment in the other case.

## II. ANALYSIS

### A. MOOTNESS

Defendant first argues that this scoring issue is moot because he is already serving a longer sentence in Case

No. 01-25048-FC, which sentence runs concurrently with his sentence in this case and that, therefore, this Court can offer the prosecution no remedy. We disagree.

An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy. *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003), citing *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994). In this case, the prosecution appeals the trial court's scoring, which affected the lesser of defendant's two concurrent sentences. So, even if this Court finds no scoring error, the time to be served by defendant will not change. However, a question is not moot if it will continue to affect a party in some collateral way. *In re Dodge Estate*, 162 Mich App 573, 583-584; 413 NW2d 449 (1987), citing *Swinehart v Secretary of State*, 27 Mich App 318, 320; 183 NW2d 397 (1970).

For several reasons, defendant's mootness argument is somewhat disingenuous. First, at oral argument before this Court, defense counsel indicated that defendant's sentence in this case would be affected if this Court were to determine that pregnancy is a bodily injury under the offense variable. Thus, a remedy could be fashioned because the sentence on appeal would be modified if the prosecution prevailed. *Dodge, supra.* Second, and more importantly, as defendant recognizes, in its order of remand, the Supreme Court required us to review the issues. Third, and finally, defendant has offered no case law to suggest that the issue is moot, and we will not search for authority to support defendant's position. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). We therefore turn to the substantive issues to be decided.

### B. *PEOPLE v WOODS*

In *Woods, supra,* the defendant pleaded nolo contendere to one count of third-degree CSC and was sentenced to a term of imprisonment of seven to fifteen years. *Woods, supra* at 473. The victim became pregnant, and subsequently had an abortion. *Id.* at 474. The trial court scored twenty-five points under OV 2 of the former judicial sentencing guidelines, which provided for a twenty-five point score if the victim suffers "bodily injury." *Id.*[1] There was no definition of "bodily injury" under the judicial guidelines, *id.,* just as there is none under the legislative sentencing guidelines.

Because there was no judicial definition of "bodily injury," the *Woods* Court looked for guidance in our sister states' case law and found persuasive the following decision from the California Court of Appeals:

> Looking to other jurisdictions for guidance, we find the language in *People v Sargent,* 86 Cal App 3d 148, 151-152; 150 Cal Rptr 113 (1978), persuasive:
>
> "A pregnancy resulting from a rape (and, in this case, a resulting abortion) are not injuries necessarily incidental to an act of rape. *The bodily injury involved in a pregnancy* (and, in this case, a resulting abortion) *are significant and substantial. Pregnancy cannot be termed a trivial, insignificant matter. It amounts to significant and substantial bodily injury or damage.* It involves more than the psychological and emotional distress necessarily incident to a rape which psychological or emotion distress the authors of [*People v*] *Caudillo* [21 Cal 3d 562; 146 Cal Rptr 859, 580 P2d 274 (1978), overruled on other grounds *People v Martinez,* 20 Cal 4th 225; 83 Cal Rptr 2d 533, 973 P2d 512 (1999)] deemed not to constitute significant or substantial

---

[1] Specifically, under the judicial sentencing guidelines, OV 2 was entitled "Physical attack and/or injury," and for twenty-five points it stated "bodily injury and/or subjected to terrorism." Michigan Sentencing Guidelines (2d ed, 1988), p 26.

physical injury. *Major physical changes begin to take place at the time of pregnancy. It involves a significant bodily impairment primarily affecting a woman's health and well being.* It is all the more devastating when imposed on a woman by forcible rape.

Pregnancy can have one of three results—childbirth, abortion or miscarriage. *Childbirth is an agonizing experience.* An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself. Just what the dimensions of a "normal" rape might be, we leave to the authors of *Caudillo.* We merely find that the facts in this case, i.e., a pregnancy followed by an abortion, clearly support a finding of great bodily injury." [*Woods, supra,* at 474-475 (emphasis added).]

Although both pregnancies in *Woods* and *Sargent* were aborted, we believe the italicized language above supports the conclusion that under *Woods* and *Sargent* a pregnancy that results from criminal sexual conduct constitutes a bodily injury. The ultimate question, however, is whether the *Woods* definition of "bodily injury" applies to the statutorily undefined term "bodily injury" within MCL 777.33.[2] We now turn to that issue, which entails a de novo review. *People v Thousand,* 465 Mich 149, 156; 631 NW2d 694 (2001).

C. OV 3

OV 3 is codified in MCL 777.33 and is the offense variable utilized when there is "physical injury to a victim." MCL 777.33(1). In scoring OV 3, the Legislature instructed that ten points be scored if "bodily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). If a "bodily injury not requiring medical treatment occurred to a victim," then a trial

---

[2] There is no dispute that because the instant crime occurred after January 1, 1999, the legislative sentencing guidelines apply to defendant. MCL 769.34(2).

court is to score five points. MCL 777.33(1)(e). The phrase "requiring medical treatment" refers to "the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3).

As our Supreme Court noted in *People v Hegwood,* 465 Mich 432, 439; 636 NW2d 127 (2001), when enacting the statutory sentencing guidelines, the Legislature utilized terms and phrases familiar to Michigan judges from applying the judicial sentencing guidelines:

> [T]he Legislature opted for a system with many features that were easily recognizable by courts familiar with the format previously employed in Michigan. The transition to the new guidelines was facilitated by this choice since Michigan's sentencing judges were acquainted with, and fully understood, concepts such as prior record variables, offense variables, and sentencing ranges.

Consistent with this overarching policy, the Legislature drafted OV 3 using certain language pertinent to this case and which is identical to that of OV 2 of the judicial sentencing guidelines, i.e., that a "bodily injury" can be scored as a "physical injury."[3] Thus, the Legislature carried forward the term "bodily injury" from OV 2 of the judicial sentencing guidelines to OV 3 of the statutory sentencing guidelines. And, since we must presume that the Legislature was aware of existing case law definitions of terms enacted into law, *People v Mendoza,* 468 Mich 527, 532 n 2; 664 NW2d 685 (2003); *Pulver v Dundee Cement Co,* 445 Mich 68, 75; 515 NW2d 728 (1994), it seems evident that the Legislature knew of and accepted the *Woods* definition of "bodily injury" when it enacted into law the same words used and interpreted under the judicial guidelines. Because the

---

[3] The only substantive language contained in MCL 777.33(1)(d) and (e) not found in OV 2 is the "requiring medical treatment" phrase, which is an additional finding to that of "bodily injury."

Legislature utilized the same words, we hold that the *Woods* definition applies to the Legislature's use of the words "bodily injury" within MCL 777.33(1).[4]

Even without the authority of *Woods*, we would still hold that, in the context of CSC cases, "bodily injury" includes pregnancy. Looking to the technical dictionary definition of "bodily injury," *People v Meyers,* 250 Mich App 637, 643; 649 NW2d 123 (2002), we note that it is defined as "[p]hysical damage to a person's body." Black's Law Dictionary (7th ed). As noted in other decisions, by necessity, a woman's body suffers "physical damage" when carrying a child through delivery as the body experiences substantial changes to accommodate the growing child and to ultimately deliver the child. See, e.g., *United States v Shannon,* 110 F3d 382, 388 (CA 7, 1997) (en banc) ("Apart from the nontrivial discomfort of being pregnant (morning sickness, fatigue, edema, back pain, weight gain, etc.), giving birth is intensely painful. . . ."). These types of physical manifestations to a woman's body during pregnancy and delivery clearly fall within the definition of "bodily injury," for the manifestations can and do cause damage to the body.[5] *Id.*

---

[4] The trial court appeared reluctant to include pregnancy in the definition of "bodily injury" because the Legislature did not explicitly define that term. While it is certainly true that the judiciary is not empowered to alter a clear and unambiguous statute by judicial fiat, Kelly-Stehney & Assoc, Inc v MacDonald's Industrial Products, Inc, 254 Mich App 608, 615; 658 NW2d 494 (2003), lv gtd 468 Mich 945 (2003), it is equally clear that it is our duty to "give undefined statutory terms their plain and ordinary meanings [by consulting] dictionary definitions." Koontz v Ameritech Services, Inc, 466 Mich 304, 313; 645 NW2d 34 (2002). See, also, MCL 8.3a; People v Hill, 257 Mich App 126, 145; 667 NW2d 78 (2003).

[5] We note the importance of the circumstances in which this issue is discussed. Outside the instant context, i.e., a pregnancy resulting from an illegal act, it may seem peculiar to consider pregnancy to be a bodily injury. After all, pregnancy is a wonderful event that is celebrated as one of life's greatest gifts. However, we are dealing with a statutory definition in the context of a pregnancy resulting from CSC.

("Pregnancy resulting from rape is routinely considered a form of grave bodily injury.").

Finally, we reject defendant's contention that because "personal injury" under MCL 750.520a is defined to include both "bodily injury" and "pregnancy," the Legislature must consider the two terms to be mutually exclusive. Again, we believe the *Woods* Court came to the proper resolution of this argument:

> Although defendant correctly observes that "bodily injury" and "pregnancy" are listed separately under this definition, the two are not mutually exclusive. Indeed, "disfigurement" or "loss or impairment of a sexual or reproductive organ" would constitute "bodily injury" within the meaning of OV 2, even though all three constitute "personal injury" under the statute. [*Woods, supra* at 474.]

Our dissenting colleague's opinion seems to be premised upon two erroneous propositions. One, he opines that we cannot look to *Woods* if there is no ambiguity in the statute and, two, that under a "textual" approach, pregnancy cannot be included within the term "bodily injury." We address these issues *seriatim*.

Since "bodily injury" is undefined, this case does not involve the "text" of the statute, as the Legislature neglected to provide a definition (i.e., the text) that the courts could apply. See *Clackamas Gastroenterology Assoc, PC v Wells*, 538 US 440, ___; 123 S Ct 1673, 1679; 155 L Ed 2d 615 (2003) ("[C]ongressional silence often reflects an expectation that courts will look to the common law to fill gaps in statutory text, particularly when an undefined term has a settled meaning at common law.") Because the lack of legislative definition causes a "gap" in the statutory text, our opinion is not the type of impermissible situation where we are read-

ing nonexisting words into a statute.[6] As such, our Supreme Court and the United States Supreme Court will look to a dictionary, as opposed to legislative history, for example, to determine the ordinary meaning of the words used. See *Northville Charter Twp v Northville Pub Schools*, 469 Mich 285, 292; 666 NW2d 213 (2003) (Justice TAYLOR, writing for the Court, used a dictionary to determine the ordinary meaning of the statutorily undefined terms "site plan," "sole," and "exclusive"); *Asgrow Seed Co v Winterboer*, 513 US 179, 187; 115 S Ct 788; 130 L Ed 2d 682 (1995) (Justice Scalia, writing for the Court, used Black's Law Dictionary to determine the meaning of the statutorily undefined term "marketing").[7]

Regarding our reference to the *Woods* definition of "bodily injury," we believe, as did our Supreme Court in *Mendoza* and *Pulver* and the United States Supreme Court in *Clackamas* that it is quite reasonable and proper for a court to consider the Legislature to have approved the case law definition of a term that it subsequently uses, without definition, in a subsequent statute addressing the identical issue.[8] This is particularly true in this case, where the Legislature has codified certain terms utilized in the former judicial sen-

---

[6] For example, if the Legislature had defined "bodily injury" by an exhaustive list of items, and that definition did not include pregnancy, we would have a much different case. In that situation, we would be unconstitutionally ignoring the plain language of the statute to include an item not contained within the exhaustive list provided by the Legislature. We obviously do not have that situation in this case.

[7] We note that the dissent also consults a dictionary for the definition of "bodily injury."

[8] Justice Scalia, in his book A Matter of Interpretation (Princeton, New Jersey: Princeton University Press, 1997), p 27, indicates that there is nothing inconsistent with textualism when applying the common-law definition of a term when enacted into statutory law when the Legislature has provided no definition for the term.

tencing guidelines, which were previously used by, and therefore familiar to, judges throughout the state. *Hegwood, supra* at 439. Contrary to the dissent's position, we do not look to this case law definition because the statute is ambiguous. Instead, it is because *there is no statutory definition available* that we must look to the dictionary and common law for definitions of the same terms used by the Legislature in MCL 777.33. Nor is there any surrounding text that is of any assistance. *Id.*[9]

### III. CONCLUSION

The trial court's decision that a pregnancy cannot constitute "bodily injury" under OV 3 is reversed. On remand, the trial court shall determine whether to score five or ten points for OV 3, which will depend on whether medical treatment was required for the bodily injury (pregnancy). MCL 777.33(1)(d) and (e). We do not retain jurisdiction.

MARKEY, J., concurred.

MURPHY, J. (*dissenting*). I respectfully disagree with the majority's reliance on *People v Woods,* 204 Mich App 472; 517 NW2d 239 (1994), and I further disagree with the conclusion that pregnancy constitutes a "bodily injury" within the meaning of Offense Variable (OV) 3, MCL 777.33.

In *Woods, supra,* this Court was interpreting the judicial sentencing guidelines promulgated by the

---

[9] We also reject the dissent's reliance on the product of the pregnancy, the child, as having any relevance to the legal issue presented. The question presented to us is whether pregnancy itself falls within the term "bodily injury." There is no assertion by either party that the child born from the pregnancy has any bearing on that issue, and the two issues are completely unrelated in a legal sense.

Michigan Supreme Court, not a statutory provision enacted by the Legislature such as MCL 777.33. Because a legislative enactment was not involved, the *Woods* panel did not apply the governing rules for statutory construction. In *Pohutski v City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002), our Supreme Court stated:

> When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Where the language is unambiguous, "we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature. [Citations omitted.]

Accordingly, we are mandated to interpret the term "bodily injury" pursuant to the rules of statutory construction cited above, and in my opinion, *Woods*, which sought sole guidance from California law, is not implicated unless an ambiguity is found in MCL 777.33. MCL 769.34(10) permits appellate review of alleged scoring errors, and this Court reviews de novo matters involving statutory construction. *Macomb Co Prosecutor v Murphy,* 464 Mich 149, 157; 627 NW2d 247 (2001).

"Bodily injury" is not defined in OV 3 or anywhere in the legislative sentencing guidelines. Where a term is not defined by the Legislature, it is appropriate to consult dictionary definitions in order to aid in construing the term in accordance with its ordinary and generally accepted meaning. *Stanton v Battle* Creek, 466 Mich 611, 617; 647 NW2d 508 (2002); *Murphy,*

*supra* at 158-159; *People v Hill*, 257 Mich App 126, 145; 667 NW2d 78 (2003). As reflected in the majority opinion, Black's Law Dictionary (7th ed) defines "bodily injury" as "[p]hysical damage to a person's body." The *Random House Webster's College Dictionary* (2001) defines "injury" as "harm or damage done or sustained, esp. bodily harm[.]" The recurring theme in both of these definitions is "damage," which is defined as "injury or harm that reduces value, usefulness[.]" *Id.* I cannot and will not equate pregnancy to harm or damage to the body. I agree with the majority's sentiment in footnote five of its opinion, which states "pregnancy is a wonderful event that is celebrated as one of life's greatest gifts." Although I fully recognize the horrific and abhorrent circumstances under which a pregnancy results in criminal sexual conduct (CSC) cases, the creation of a new life, innocent of any wrongdoing, cannot, in my opinion, be relegated to the designation of "damage" unless the Legislature has clearly expressed such an intent. While I find it appropriate to increase the offense variable scoring where a perpetrator has impregnated a victim, the Legislature, and not this Court, must express that sentiment through clear legislation.

The plain and ordinary meaning of "bodily injury" does not encompass a pregnancy. The visceral as well as intellectual reaction of most individuals would not place a correlation between "bodily injury" and pregnancy. This can be seen, for example, where the Legislature has found it necessary to expressly define an injury to include pregnancy as reflected in MCL 750.520a(l) (" 'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy . . . .")[1] and

---

[1] MCL 750.520a pertains to definitions of words used in the CSC statutes.

MCL 18.351(f) (" 'Personal physical injury' means actual bodily harm and includes pregnancy.").[2] If the plain and ordinary meaning of "bodily injury" includes pregnancy, I question why the Legislature saw the need to specify in other instances that an injury indeed includes pregnancy. Clearly, the Legislature viewed a need because a pregnancy is not the equivalent of an injury and, here, the Legislature chose not to define "bodily injury" as including pregnancy. I disagree with the majority's conclusion that physical manifestations of pregnancy constitute "bodily injury." Although undoubtedly there are physical manifestations that arise from being pregnant, they are not necessarily injurious or damaging, and they differ from pregnancy to pregnancy and from woman to woman. I conclude that, under a textual reading of the statute, the Legislature did not intend for "bodily injury," as used in MCL 777.33, to include pregnancy.

I would affirm.

---

[2] MCL 18.351 concerns crime victims' compensation.