# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY L. DIXON,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2015

No. 317219
Kalamazoo Circuit Court
LC No. 2012-000718-FC

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1). Defendant was sentenced to 25 to 40 years' imprisonment, and he now appeals his conviction and sentence as of right. Because none of the issues raised in defendant's brief on appeal or his Standard 4 brief requires reversal, we affirm.

Defendant was the victim's stepfather and one of her primary caretakers. The victim, who was 27 years old at the time of trial, suffers from a multitude of physical and mental impairments resulting from a heart defect and several strokes and cardiac arrests suffered during infancy that deprived her brain of oxygen. She requires constant care. An expert in neurodevelopmental disabilities and adolescent medicine, who had treated the victim for approximately ten years, indicated that the victim was moderately to severely retarded, with an IQ of approximately 40.

In early February 2012, it was discovered that the victim was pregnant. When police first spoke to defendant about the circumstances surrounding the pregnancy, defendant indicated his belief that the victim's mental capacity was "somewhere around the capacity of a four-year old." When asked if the victim could understand or consent to sexual intercourse, defendant responded "absolutely not." The victim subsequently underwent an abortion procedure. After the unborn fetus was removed from the victim's body, doctors collected the fetal material as evidence. That evidence, along with buccal swabs from several potential suspects, including defendant, was submitted to the Michigan State Police (MSP) crime laboratory for DNA analysis. Testing subsequently excluded all of the suspects as the father of the unborn fetus except for defendant.

The case proceeded in the ordinary course for several months, and trial was eventually set for May 14, 2013. At a settlement conference on May 10, 2013—just four days before trial— defendant requested, for the first time, funds to obtain an expert DNA witness. Defendant's trial

counsel acknowledged the lateness of the request and acknowledged that the DNA evidence had been a key piece of evidence from the outset of the case but indicated that the request was prompted by the trial court's recent denial of defendant's motion for a cognitive evaluation of the victim and his motion to exclude the prosecution's expert DNA witness from testifying. Trial counsel reiterated this in a subsequent written motion and argued that an expert DNA witness was now critical; defendant could not safely proceed to trial without the benefit of consultation with an expert who could inform trial counsel about DNA evidence and who could review the DNA evidence for accuracy and reliability.

The trial court denied defendant's request for an expert witness fee on the morning of trial. The trial court found it "very hard to give any credence to an argument that suddenly this has become an issue" when the defense knew from the outset that the prosecution's case was based primarily on DNA evidence, though it noted that the decision to wait so long appeared to have been the product of a "thought through strategy" by defense counsel. Moreover, the trial court reasoned that defendant had failed to demonstrate anything more than mere speculation as to whether an expert witness would benefit his case.

The only evidence establishing defendant as the perpetrator at trial was the DNA evidence. Following his conviction, he moved the trial court for a new trial, or in the alternative an expert witness fee, or in the alternative a *Ginther*[1] evidentiary hearing on alleged ineffective assistance of trial counsel. Defendant argued that the trial court erred in denying his request for an expert witness fee, which deprived him of a fair trial, and that his trial counsel was ineffective for failing to make the request sooner. In support of his argument that a DNA expert was critical to his defense, defendant identified several "anomalies" in the DNA test procedures discovered at trial. At a hearing on the matter, defendant's appellate counsel conceded that the anomalies identified in his motion were addressed at trial and further conceded that he had no way of knowing whether the anomalies, in fact, undermined the validity of the DNA evidence. Finally, he conceded that an independent expert could very well review the MSP's work and conclude that the results were reliable. The trial court denied defendant's post-conviction request for relief.

Defendant filed the instant appeal with this Court, raising two issues: (1) whether the trial court erred in denying his motion for expert witness fees and (2) whether the trial court erred in its scoring of OV 3 and OV 4. Defendant also filed a Standard 4 brief on appeal, raising another two issues. After hearing oral argument, this Court remanded the case back to the circuit court to "provide funds sufficient to permit defendant to obtain independent DNA testing." *People v Dixon*, unpublished order of the Court of Appeals, entered December 15, 2014 (Docket No. 317219). The order also provided that "[w]ithin 56 days of receiving the test results, defendant may seek further relief, if appropriate, in the circuit court." *Id.*

On remand, defendant obtained funds for a DNA expert, who, due to some anomalies in the state's initial testing, suggested re-running the tests under new parameters. Cellmark Forensics conducted the subsequent DNA testing and concluded that defendant had a

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

99.999999% chance of being the biological father of the unborn fetus, with a "combined paternity index of all fourteen genetic systems [being] 984,474,996 to 1."

Defendant indicated that he would not be filing any further motions at the circuit court and noted that his appeal could proceed in this Court with all of his previously raised issues.

## I.  EXPERT WITNESS FEE

On appeal, defendant argues that the trial court erred in denying his pre- and post-trial requests for an expert witness fee.  But because of our remand order allowing expert fees, this issue is moot.  Moreover, even if the trial court abused its discretion in denying defendant's request for DNA expert fees, any error was harmless, as defendant's expert would not have assisted the defense since Cellmark concluded with 99.999999% certainty that defendant was the biological father.  Similarly, defendant's related claim that his trial counsel was ineffective by failing to request the expert witness fee earlier in the lower court proceedings must fail because it is clear that, with the new testing results, defendant cannot establish how counsel's failure to seek the fees earlier caused any prejudice.  See *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (stating that to prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient *and* that the deficient performance prejudiced his defense).

## II.  SENTENCING

## A.  OFFENSE VARIABLE SCORING

Defendant next argues that the trial court erred in scoring ten points each under Offense Variable (OV) 3 and OV 4 of the sentencing guidelines.  We review these unpreserved challenges for plain error affecting substantial rights.  *People v Loper*, 299 Mich App 451, 457; 830 NW2d 836 (2013).

OV 3 scores points for the degree of physical injury to a victim and provides that ten points may be assessed where "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d).  Defendant asserts that a pregnancy should not be considered a bodily injury. But this Court has previously held that, for purposes of OV 3, "bodily injury" includes pregnancy.  *People v Cathey*, 261 Mich App 506, 513-515; 681 NW2d 661 (2004).  Defendant acknowledges this precedent but questions its validity.  However, *Cathey* is binding upon this Court, MCR 7.215(J)(1), and as a result, defendant has not established any plain error.

OV 4 scores points for the degree of psychological injury to a victim and provides that ten points may be scored where "[s]erious psychological injury requiring professional treatment occurred to a victim."  MCL 777.34(1)(a).  Defendant contends that OV 4 was improperly scored at ten points because there was no record evidence of such an injury.  Here, it appears that the trial court's scoring decision was based on a victim impact statement written by the victim's biological father, which was attached to defendant's presentence investigation report (PSIR).  In his statement, the victim's father indicates that the sexual assault affected the victim "a great deal."  She now has nightmares, is afraid of males getting too close to her, is very emotional, and her communication skills have changed.  As a result of the assault, the victim was provided counseling through Sexual Assault Services of Calhoun County.  "[A] sentencing court may

consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a [PSIR] . . . ." *People v Althoff*, 280 Mich App 524, 541; 760 NW2d 764 (2008) (quotation marks omitted). Furthermore, a PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2013). Thus, it was appropriate for the trial court to consider the victim impact statement. Moreover, the victim impact statement supported, by a preponderance of the evidence, that the victim suffered some degree of psychological injury from the sexual assault.

## B. SIXTH AMENDMENT CONCERN

Although not raised by defendant, we take this opportunity to evaluate these two OV scorings in light of our Supreme Court's recent decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015). In *Lockridge*, the Supreme Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id.* at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id.* at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when sentencing.' " *Id.* at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining if there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id.* at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id.* at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, the court would have imposed a materially different sentence. *Id.* at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id.* at __ (slip op at 34).

The ten points scored for OV 3 was necessarily found by the jury. This is because the *only* evidence linking defendant to the crime of sexually penetrating the victim was his DNA sample from the aborted fetus. Consequently, the jury, in finding defendant guilty of this criminal sexual conduct, found that defendant impregnated the victim, and under *Cathey*, this constitutes a bodily injury to warrant ten points for OV 3.

But the ten points scored for OV 4 is a different matter. As noted previously, the only evidence supporting a finding that the victim suffered a serious psychological injury was introduced at the sentencing hearing after the jury rendered its verdict. Consequently, it is clear that the scoring of the ten points for OV 4 was based on a fact found by the judge that was not admitted by the defendant or found by the jury.

However, defendant cannot establish any plain error requiring relief. Defendant's total OV score at sentencing was 30 points, which placed him at level II for OV for Class A offenses.

MCL 777.62. When the ten points for OV 4 are discounted because the underlying facts supporting that score were not found by the jury, defendant's total OV score reduces from 30 to 20 points, which still is in the level II category for Class A offenses. MCL 777.62. Hence, because the facts found by the jury were sufficient to still fall under level II of the sentencing grid, which was the level the trial court used at sentencing, defendant is not entitled to any relief because defendant cannot establish any prejudice. See *Lockridge*, ___ Mich at ___ (slip op at 32).

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant next raises two issues in his Standard 4 brief. Neither of them has any merit.

Defendant first argues that his due process right to a fair trial was violated when the trial court "shackled" him with a tether during trial, a fact which only became apparent to the jury when during the proceedings, the tether was activated. Defendant further argues that his trial counsel was ineffective for failing to object to defendant having to wear this "shackle" during trial and for failing to request a mistrial when the tether was activated.

Freedom from shackling has long been recognized as an important component of a fair trial "because having a defendant appear before a jury handcuffed or shackled negatively affects the defendant's constitutionally guaranteed presumption of innocence." *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002); see also *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). "Consequently, the shackling of a defendant during trial is permitted only in extraordinary circumstances." *Dixon*, 217 Mich App at 404. In this case, however, we disagree with defendant's contention that the obligation to wear an electronic monitoring device is the constitutional equivalent of restraint by shackling. There is no indication from the record that defendant's tether was visible to the jury at any time. It only became an issue when, for some unknown reason, it activated on day four of the trial and audibly announced, "Call your officer now." The activation of defendant's tether during trial implicated, to some extent, his due process right to the presumption of innocence, inasmuch as it made the jury aware that he was "marked" as an individual in need of constant monitoring. See *People v Payne*, 285 Mich App 181, 187; 774 NW2d 714 (2009). However, because the tether was not visible to the jury, we perceive no plain error in the trial court ordering it as a condition of his bond. The trial court was within its discretion to impose that condition in lieu of incarceration, especially in light of the apparent allegation that defendant had made contact with the victim or victim's family while out on bond. Furthermore, the specific triggered alarm did not deny defendant a fair trial. When the tether was activated, the trial court quickly removed the jury from the courtroom. Upon its return, the trial court instructed the jury that the tether was simply part of defendant's duty to "check in" as a condition of his bond and that it had nothing to do with the proceedings. Thus, we do not believe that this isolated incident, coupled with the trial court's somewhat innocuous curative instruction, acted to deprive defendant of the presumption of innocence that he was entitled to as part of a fair trial.

In light of the above conclusion, we reject defendant's claim of ineffective assistance of counsel. Defense counsel cannot be faulted, in the first instance, for failing to object to defendant having to wear the tether during trial. The tether was a condition of bond imposed by the trial court, and there was no way anyone would have known that it erroneously would

activate during trial. There is thus no basis for concluding that the trial court would have entertained a request to have the tether removed during trial. Defense counsel is not ineffective for failing to make a meritless request. *People v Snider*, 239 Mich App 393, 435; 608 NW2d 502 (2000). Likewise, defense counsel was not ineffective for failing to request a mistrial when the tether was mistakenly activated. "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Here, the error was not so prejudicial as to require a mistrial, and any prejudice was adequately mitigated by the trial court's instruction. Thus, defense counsel was not ineffective for failing to make this meritless request. *Snider*, 239 Mich App at 435.

Defendant finally argues that his defense counsel was ineffective for failing to move for the exclusion of the state's expert DNA testimony in light of the results of a polygraph examination. According to defendant, he took and "passed" a polygraph examination, thereby showing that he did not sexually assault the victim. Because the results of the polygraph allegedly contradicted the DNA evidence, defendant contends that his trial counsel should have raised this fact in support of a motion to exclude the DNA evidence. Defendant's claim fails for two reasons. First, there is nothing in the record indicating that defendant was in fact given a polygraph examination or what any results were. As such, defendant failed to establish the requisite factual predicate for his claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and his claim necessarily fails. Second, assuming arguendo that defendant's assertion related to the polygraph test was supported by the record, the fact that he passed a polygraph test does not make the DNA expert's testimony now inadmissible. Defendant cites no authority for this proposition. According to defendant's brief, in the event that he passed the test, the prosecutor simply was to "take [the result] into consideration." This hardly is equivalent to a promise to drop the charges, let alone a promise to not admit DNA evidence, in the event that defendant passed the test. Accordingly, because defendant's polygraph test results have no bearing on the admissibility of the DNA expert's testimony, defense counsel was not deficient in failing to raise this aspect in his argument to preclude the DNA evidence. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Affirmed.

/s/ Mark T. Boonstra
/s/ Pat M. Donofrio
/s/ Elizabeth L. Gleicher

-6-