*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN NATHANIEL LAUNSBURRY,

        Defendant-Appellant.

UNPUBLISHED
November 14, 2024
10:06 AM

No. 367086
Kent Circuit Court
LC No. 93-064278-FC

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Defendant appeals his sentences, on resentencing, of 40 to 60 years' imprisonment for felony murder, MCL 750.316(b), and two years' imprisonment for possession of a firearm when committing a felony (felony-firearm), MCL 750.227b. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the resentencing of defendant, under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), after he was sentenced to life without the possibility of parole (LWOP) as a juvenile in 1993. The facts underlying defendant's crime were previously summarized by this Court:

> On November 26, 1993, defendant and codefendant, Gregory Wines, intending to steal a vehicle in order to leave town, flagged down the victim's car. The victim was an expectant mother who was the lone occupant of the vehicle. After the victim stopped, defendant got into the passenger side of the vehicle. Wines sat directly behind the victim. Defendant pulled a .22 caliber revolver from his waistband and told the victim to follow his directions. After traveling for a time, defendant told the victim to pull over and stop the vehicle. Defendant ordered the victim out of the car. While Wines remained in the vehicle, defendant walked the victim toward a factory building. In defendant's first two statements to the police defendant admitted that when he and the victim came to a wall of the building, he shot the victim twice in the back of the head. However, at trial, defendant testified it was codefendant Wines who shot the victim after defendant

-1-

made the victim get down on her hands and knees.[1]  Defendant claims he agreed to take the blame for the shooting because he was a juvenile and would not be subject to as harsh a penalty as codefendant.  Defendant stated he was willing to take the "rap" even though his codefendant was the person that turned him in.  Defendant does not dispute that he and Wines planned the robbery in advance and that defendant acquired the gun and ammunition used in the murder.  [*People v Launsburry*, 217 Mich App 358, 359-360; 551 NW2d 460 (1996).]

After the United States Supreme Court held that "mandatory life-without-parole sentences for juveniles violate[d] the Eighth Amendment[,]" *Miller*, 567 US at 470, and that this rule was retroactive, *Montgomery v Louisiana*, 577 US 190, 212; 136 S Ct 718; 193 L Ed 2d 599 (2016), defendant was resentenced.  The prosecution initially requested that the trial court uphold defendant's LWOP sentence, which it did, but later granted defendant's motion for resentencing.

While defendant's application for leave to appeal to our Supreme Court on an unrelated matter was pending, the prosecution withdrew its motion seeking LWOP, and requested the maximum term-of-years sentence imposable on defendant—40 to 60 years.  Our Supreme Court denied defendant's application one day before defendant's resentencing hearing.  *People v Cruz*, 511 Mich 995 (2023).[2]  The morning of the hearing, defense counsel filed a sentencing memorandum.  At the outset of defendant's resentencing, the trial court expressed its disappointment that it had only received defendant's sentencing memorandum that morning, but confirmed it had read the memorandum and was already familiar with the other submitted documents.  The trial court ultimately resentenced defendant to 40 to 60 years' imprisonment.  Defendant now appeals.

## II.  SENTENCE PROPORTIONALITY

Defendant first argues the trial court abused its discretion in imposing a disproportionate sentence.  We disagree.

### A.  STANDARD OF REVIEW

"Sentencing decisions are reviewed for an abuse of discretion."  *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022).  "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes."  *Id*.

### B.  LAW AND ANALYSIS

"Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range."  *Boykin*, 510 Mich at 183.  "Within that range, the sentence should be tailored to the particular circumstances of the case and offender."  *Id*.  "It is the trial court's duty to exercise discretion in a way that

---

[1] Defendant has since admitted that he was the one who shot the victim.

[2] Defendant's application was consolidated with *People v Cruz*, and both were denied in this order.

ensures the individualized sentence conforms with the principle of proportionality." *Id*. "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id*. "However, these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id*. at 183-184. "Unless the prosecution moves to sentence a defendant to life in prison without the possibility of parole, juvenile defendants who are convicted of certain enumerated acts may receive a minimum sentence of 25 to 40 years and a maximum sentence of 60 years." *Id*. at 184, citing MCL 769.25(4) and (9); MCL 769.25a(4)(c).

"Since 2005, the Supreme Court's message has been clear: one's juvenile status matters, and special consideration must be paid to youthful offenders before the harshest sentences may be imposed." *Boykin*, 510 Mich at 185. Our Supreme Court has considered "three general differences between juvenile and adult offenders that demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id*. (quotation marks and citation omitted).

> Those differences are: (1) juveniles have a lack of maturity and an underdeveloped sense of responsibility, which often result[s] in impetuous and ill-considered actions and decisions; (2) juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure, and (3) the character of a juvenile is not as well formed as that of an adult. [*Id*. (quotation marks and citation omitted).]

Thus, "in all sentencing hearings conducted under MCL 769.25 or MCL 769.25a, trial courts are to consider the defendant's youth and must treat it as a mitigating factor." *Id*. at 189.

Defendant generally argues that the sentence imposed by the trial court is disproportionate, and reflects the trial court's unsupported reasoning considering the trial court's recognition of defendant's youth and other mitigating factors on the record. However, the trial court's reasoning on the record adequately supports that defendant's sentence falls within the range of principled outcomes. *Id*. at 182. The trial court noted defendant's youth as well as its doubts that, given his age, he could have properly interacted with police. The trial court also appears to have accepted as true defendant's later-introduced claims of childhood abuse, and considered defendant's good behavior while incarcerated, which the trial court considered as mitigating factors. But, the trial court also properly considered several negative factors that supported its ultimate sentence.

The trial court considered the aggravating circumstances of this case. For instance, defendant, after shooting the pregnant victim twice, left her in a secluded area where she was not discovered until the following day; she died three days later. The trial court believed there was "no excuse or justification for that whatsoever." Additionally, the trial court noted that defendant was the leader in this situation, reasoning that "this was [his] decision, and it was [his] idea, and [he was] the one that executed [the victim]." Given the severe and brutal circumstances underlying

the murder, as well as defendant's role as the leader in its commission, the trial court did not abuse its discretion by sentencing defendant to 40 to 60 years' imprisonment.[3]

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues his counsel was ineffective because counsel "waited until the morning of sentencing to file a hastily prepared sentencing memorandum, . . . and failed to seek an adjournment when this mistake became clear following the Michigan Supreme Court's decision." We disagree.

### A.  STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted.) When no *Ginther*[4] hearing is held, this Court's review is "limited to mistake apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

### B.  LAW AND ANALYSIS

In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*Abcumby-Blair*, 335 Mich App at 228.]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). "Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Defendant must overcome a strong presumption that counsel's performance

---

[3] Defendant argues that the trial court's statement about the resentencing laws failing to adequately consider the victim "suggests that the [trial] court imposed a sentence at the top of the [guidelines] range, despite the mitigating factors crying for a more lenient sentence, because it disagreed with the legal principles it was bound by." But, defendant cites no caselaw indicating the trial court was forbidden from considering the impact his crime had on the victim's friends and family. Indeed, "[w]hen calculating sentencing guidelines, the trial court may consider all record evidence," including "victim-impact statements, and [it] may make reasonable inferences from evidence in the record." *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). There is no indication that the trial court gave undue weight to the harm defendant caused the victim's friends and family as opposed to the other factors underlying this case.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

constituted sound trial strategy." *Id*. at 411. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. (quotation marks and citation omitted).

Defendant cannot establish "a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, 335 Mich App at 228. The trial court reported on the record that it had read the sentencing memorandum. It further indicated that it had reviewed the relevant exhibits attached to the memorandum when they had been submitted earlier. The trial court was also reminded of defendant's position during defense counsel's argument, and clearly considered the mitigating circumstances articulated in the memorandum when fashioning defendant's sentence. There is nothing in the record suggesting the trial court was not well-informed about this case when it resentenced defendant, and nothing indicating the outcome would have been different had the trial court received the memorandum earlier. Because defendant has failed to demonstrate prejudice, we need not consider whether counsel's performance fell below an objective standard of reasonableness. *Id*.

Affirmed.[5]

/s/ Mark T. Boonstra
/s/ Christopher M. Murray
/s/ Thomas C. Cameron

---

[5] Because we are affirming defendant's sentence, defendant's unpreserved argument of judicial bias seeking reassignment on remand is moot. See *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004) ("An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy.").