# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 6, 2018

v

No. 335691
Newaygo Circuit Court
LC No. 15-010994-FH

DANIEL JAY WEAVER,

Defendant-Appellant.

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant was convicted after a bench trial of operating while intoxicated, MCL 257.625(1)(a), third offense, MCL 257.625(9)(c), and operating a motor vehicle with a suspended license, MCL 257.904(1), second offense, MCL 257.904(3)(b). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 72 months to 18 years' imprisonment for the operating while intoxicated conviction, and 12 months for the operating a motor vehicle with a suspended license conviction, with the sentences to run concurrently. Defendant appeals as of right. We affirm.

## I. FACTS

This case arises out of a traffic stop that occurred during the early morning hours of January 16, 2015. Defendant was stopped by Officer Ryan Dornbos, of the Newaygo Police Department, after Officer Dornbos saw defendant's vehicle improperly turn from the incorrect traffic lane on two occasions within a short span of time. During the traffic stop, defendant admitted that he did not have a driver's license and that he was too drunk to drive. Defendant's blood alcohol content was later determined to be .191 grams of alcohol per 100 milliliters of blood. Defendant was subsequently charged with operating while intoxicated, third offense, and operating a motor vehicle with a suspended license, second offense.

In a pretrial proceeding, the trial court informed defendant that his bond was being continued to assure his appearance at upcoming hearings. A few days later, however, defendant was arrested in a separate incident, which we will refer to as the "fleeing and eluding case." Defendant ultimately was convicted in that case of operating a motor vehicle without a valid

license, second or subsequent offense, MCL 257.904(3)(b), third-degree fleeing and eluding, MCL 257.602a(3), and resisting and obstructing a police officer, MCL 750.81d(1).[1] Attorney Melissa Dykman was appointed to represent defendant both in this case, which we will refer to as the "drunk driving case," and the fleeing and eluding case.

The trial court in the drunk driving case revoked defendant's bond pursuant to MCR 6.106 in light of the new charges against defendant in the fleeing and eluding case. Six days later, on May 18, 2015, defendant failed to appear for a joint proceeding that was the final pretrial conference in the drunk driving case and the arraignment in the fleeing and eluding case. The trial court revoked defendant's bond and issued a bench warrant for his arrest.

In the drunk driving case, at defendant's insistence, Attorney Dykman filed a motion to suppress on behalf of defendant, contending in part that the traffic stop that led to his arrest was unlawful because the officer did not see defendant commit a traffic violation. Defendant argued that the evidence obtained from the improper stop should be suppressed, and that without such evidence, the case should be dismissed. The trial court denied the motion to suppress, ruling that the traffic stop was proper. Defendant then pleaded guilty to both charges in the drunk driving case.

Following defendant's guilty plea in the drunk driving case, another joint proceeding was held in the drunk driving case and the fleeing-and-eluding case. At that hearing, Judge Monton presiding, defendant requested appointment of substitute counsel to replace Attorney Dykman. The following discussion took place:

> *The Defendant*: Yes, sir. What everybody is not understanding is I didn't have nothing to do with that, and I've got witnesses and everything that, you know, I just need a chance to present them in court.
>
> *The Court*: Okay.
>
> *The Defendant*: I mean it's understandable why the officer, you know, was mistaken, you know, so I'm not pleading guilty to anything I didn't do, Your Honor.
>
> *The Court*: Okay, that's fine.
>
> *Ms. Dykman*: Your Honor?
>
> *The Defendant*: And that's the reason why I also want to discharge her. She's never once asked me, never gave me a chance to defend myself, she just wants me to plead guilty to this.

---

[1] See *People v Weaver*, unpublished opinion per curiam of the Court of Appeals, issued February 21, 2017 (Docket No. 329900).

*The Court*: Well, you know, [defendant], on the other case that was set in front of Judge Nichols that you recently pled to, you basically said the same kind of thing, and then surprisingly enough on the day of trial you indicate that you want to plead guilty. After we get all the jury here then you plead guilty. I mean, you know, you're just, you're just unreasonable.

*The Defendant*: No, sir.

*The Court*: No, I'm not appointing you another lawyer. If you want to hire a lawyer, fine; you're just wasting taxpayer's money.

*The Defendant*: Your Honor, what happened—

*The Court*: You're welcome to go to trial and you're going to go to trial.

*The Defendant*: Your Honor, what happened last time was I begged with Ms. Dykman to go over the prosecution's evidence with me. The whole time I've been sitting—You've held me in jail without bond with no new charges, no nothing. My bond is posted on all my charges. You've held me in jail with no bond this whole time.

*The Court*: There's a good reason why you're in jail.

*The Defendant*: No, nobody had to come and get me or nothing like that. I haven't ran. You know, you've held me without bond. I wasn't able to meet with her and go over the evidence they had with me, and I was blindsided by the prosecuting's [sic] in-car video which differs completely from the one I was given and I reviewed the first time.

*The Court*: Okay.

*The Defendant*: I was flabbergasted when I seen it because she never went over it with me. If I had been able to get my own evidence and bring that into court. The disk I have is completely different than what theirs is, but she wouldn't go over them with me.

*The Court*: Okay. Let her speak.

*Ms. Dykman*: I just, for the benefit of the record, he was given a copy; not only did he have a chance to review it; he was given the CD's [sic] months ago. I asked him repeatedly if he had reviewed those, and so he did have a chance to review them. We've talked about his case and I was prepared for trial. So that's the only thing I'm going to say in reference to that, Your Honor.

*The Court*: All right.

*The Defendant*: Your Honor—

*The Court*: Enough for today. You're going back to jail, and feel free to hire another lawyer; otherwise Ms. Dykman is going to do the best she can with however difficult you always appear to be.

*The Defendant*: What about the evidence I need to accumulate, Your Honor?

*The Court*: I don't represent you. I'm the Judge on the case. I'm not your lawyer.

*The Defendant*: Well she don't—

*The Court*: Ms. Dykman will do the—She always has—

*The Defendant*: She don't represent me, either, that's why I wanted another attorney; she don't represent me.

*The Court*: Feel free to—I'm not going to appoint someone else because someone else is going to have the same problem as she does. I don't get these kinds of complaints about her. Very, very rarely do I get any complaints about Ms. Dykman. I think I'm getting a complaint from you because, you know, you're just very, very difficult to deal with. That's the facts of life.

*The Defendant*: She's trying to plead me guilty to something I didn't do.

*The Court*: Well go to trial. I don't want you to plead guilty. If you want to go to trial I want you to go to trial, and we'll do that in two weeks.

Defendant was subsequently convicted after a jury trial in the fleeing-and-eluding case, pleaded guilty in the drunk driving case, and was sentenced in both the drunk driving case and in the fleeing and eluding case in a joint proceeding. The trial court later granted defendant's motion to withdraw his guilty plea in this case (the drunk driving case), and a bench trial was held with Judge Corwin presiding. At defendant's request, defendant represented himself with Attorney Dykman present as standby counsel. The following exchange took place:

*The Court*: All right. Let me back up a second. Do you still want to represent yourself?

*The Defendant*: Absolutely.

*The Court*: Okay.

*The Defendant*: Your Honor, I would like to make right now a point on the record. I've requested, I flat-out fired Ms. Dykman last year, over a year ago.

*The Court*: Okay.

*The Defendant*: I've requested umpteen times for another attorney. I told Judge Monton last Tuesday I'm not voluntarily representing myself. I begged him for another attorney.

*The Court*: Yes.

*The Defendant*: And he's just flat-out refused. I've known guys that had four or five different attorneys. He will not appoint me another attorney.

*The Court*: Okay.

*The Defendant*: And I've got all kinds of issues about the way this case has been handled, and he won't even listen to them. He just keeps pushing Ms. Dykman on me. I was forced to represent myself. I'm ready to represent myself. We will go through with this today because I want it heard in front of you, not in front of Judge Monton, so we will go through with this today. I'm ready to represent myself.

During the trial, Officer Dornbos testified that he was on duty on January 16, 2015, at approximately 2:08 a.m., when he saw defendant's vehicle, which was traveling south on M-37, drive into the left-turn lane as if it were going to turn left, and then "continu[e] through the intersection making a wide, sweeping [right] turn." Officer Dornbos followed the vehicle south on M-37, and saw it again veer into the left lane, and again turn right. The officer therefore stopped defendant for improper lane use in violation of MCL 257.642.

When Officer Dornbos approached defendant's open driver's-side window, he immediately noticed "a strong odor of intoxicants." Officer Dornbos testified that defendant had "glossy, wet eyes" and that defendant's speech was slow and slurred. Defendant indicated that he did not have a driver's license, and the Law Enforcement Information Network (LEIN) verified that defendant's license was suspended. Defendant stated that he was not able to perform any sobriety tests and was too drunk to drive. Officer Dornbos testified that he also believed that defendant was too intoxicated to drive. A blood alcohol test obtained by search warrant later indicated that defendant's blood alcohol content was .191 grams of alcohol per 100 milliliters of blood.

After the prosecution rested, defendant made an opening statement in which he argued, among other things, that he was stopped illegally, and that he would prove that Attorney Dykman and Judge Monton were in collusion to keep him incarcerated. Defendant then stated that he wanted to call Attorney Dykman as his first witness. The trial court stated:

We are here today to determine whether or not you're not guilty or guilty of driving under the influence of alcohol and driving with a suspended license.

We're not here today to litigate what you perceive as injustices regarding previous rulings of Judge Monton or whether or not you had effective assistance of counsel.

Defendant then submitted the video recording of the traffic stop. The video shows a vehicle approaching the intersection where Officer Dornbos was parked, and shows the headlights of the vehicle veering to the left as it approaches the intersection, and then moving to the right to go through the intersection. Next, the video shows the vehicle signaling right while again moving into the left lane and then again turning to the right from the left lane.

At the conclusion of the trial, Judge Corwin found defendant guilty of operating a motor vehicle while intoxicated and driving with a suspended license. After the trial but before sentencing, Attorney Dykman petitioned the trial court to withdraw as counsel for defendant because defendant had filed a grievance against her. Judge Corwin appointed attorney Rick Prysock to represent defendant.

## II. DISCUSSION

### A. REVOCATION OF BOND

Defendant first contends, both through appellate counsel and in his Standard 4 brief,[2] that his bond was improperly revoked, resulting in a denial of substantive due process. We disagree.

As an initial matter, this issue is moot. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). In this case, defendant was initially free on bond in the drunk driving case, but the trial court revoked his bond after defendant was arrested in connection with the fleeing and eluding case, and then failed to appear for a hearing. Defendant has now been convicted and sentenced to a term of incarceration. It is not possible to reinstate his pretrial bond. Therefore, this issue is moot. *Id*.

Nonetheless, we note that even if this issue were not moot, the trial court did not err or violate defendant's right to due process by revoking defendant's bond. Defendant's claims that the revocation occurred off the record and without an indication of the basis for the revocation are incorrect. On May 12, 2015, the trial court entered an order revoking defendant's bond pursuant to MCR 6.106, citing the fact that defendant had been bound over for trial on criminal charges in the fleeing and eluding case while defendant was on bond in this case. Additionally, the trial court indicated at the May 18, 2015 hearing that it was revoking defendant's bond based on defendant's failure to appear at that hearing. Thus, the basis for the revocation of defendant's bond is clear from the record.

MCR 6.106(I)(2) permits a trial court to revoke the bond of a defendant who fails to comply with the conditions of release. Defendant's bond conditions required him to appear for court proceedings.[3] Because defendant failed to comply with his bond conditions, the trial court

---

[2] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.

[3] Although the copy of defendant's bond form included in the trial court record is incomplete, the bond form used also typically provides that defendant will refrain from committing any crime while released on bond.

was permitted to revoke his bond. *Id*.; see also *People v Mysliwiec*, 315 Mich App 414, 422; 890 NW2d 691 (2016). "The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power." *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998). Because the trial court's decision was permitted by court rule, defendant was not subjected to an arbitrary exercise of governmental power and did not suffer a violation of his substantive due process rights. *Id*.

## B. REQUEST FOR SUBSTITUTE COUNSEL

Defendant next contends that the trial court abused its discretion and denied him his right to counsel by denying his requests for substitute counsel. We disagree.

We review a trial court's decision regarding a defendant's request for substitution of appointed counsel for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

An indigent criminal defendant is guaranteed the right to counsel in all criminal prosecutions by the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998). But an indigent defendant is not guaranteed an attorney of his or her own choosing. *Traylor*, 245 Mich App at 462. An indigent defendant is entitled to substitution of defense counsel when discharge of the first attorney is (1) for good cause, and (2) does not unreasonably disrupt the judicial process. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012). Good cause is established if (1) the defendant and appointed counsel develop a legitimate difference of opinion regarding a fundamental trial tactic, (2) there has been a breakdown in communication and in the attorney-client relationship, or if (3) defense counsel has demonstrated a lack of diligence or interest. *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015). Good cause is not demonstrated merely because the defendant is generally unhappy with counsel or lacks confidence in counsel. *Id*. Counsel's decisions about defense strategy, including what witnesses to call, what evidence to present, and what arguments to make, are matters of trial strategy; disagreements regarding trial strategy do not merit appointment of substitute counsel. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011).

In this case, defendant asserted on multiple occasions that he wanted a new attorney appointed to him and generally complained that his appointed attorney, Melissa Dykman, was not satisfactorily representing him. He complained that the video recording that she had provided him was different from the prosecutor's video, which he claimed had been altered, that attorney Dykman had failed to locate and subpoena his girlfriend as a witness, and that she had failed to locate other evidence that he wanted, including Officer Dornbos's personnel record and traffic camera footage that defendant claimed existed. In response, attorney Dykman informed the trial court that she had given defendant copies of the videos of the incident and had reviewed them with defendant, after which defendant had conceded that the video that he had was the same as the prosecutor's video. She also was not aware of the existence of any traffic camera footage. Attorney Dykman stated that she sent defendant multiple letters requesting a list of witnesses and that defendant had never included his girlfriend on the witness list, but only asked

that she subpoena herself, the prosecutor, and Judge Nichols. Defendant conceded to the trial court that he did not know where his girlfriend was living for purposes of issuing a subpoena.

It is evident that defendant's complaints involved disagreements over what evidence to present and which arguments to make, as well as general discontent with Attorney Dykman's handling of the case. These are matters of trial strategy and professional judgment that do not warrant the appointment of substitute counsel. The fact that defendant was generally unhappy with Attorney Dykman does not establish that there was good cause to appoint substitute counsel. See *McFall*, 309 Mich App at 383. The trial court, therefore, did not abuse its discretion by denying defendant's request for substitute counsel.

## C. MOTION TO SUPPRESS

Defendant next contends, both through appellate counsel and in his Standard 4 brief, that the evidence obtained as a result of the traffic stop should have been suppressed because Officer Dornbos did not have probable cause to stop defendant. We disagree.

We review a trial court's ruling on a motion to suppress evidence de novo, and review the related factual findings for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). In doing so, we defer to the trial court's assessment of the weight to attribute to the evidence and the credibility of the witnesses. *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003). A finding is clearly erroneous if, after review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011).

The United States and the Michigan Constitutions protect the individual against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). Although stopping a vehicle and detaining its occupants constitutes a seizure, a traffic stop is reasonable as long as the driver is detained only for the purpose of permitting the officer to ask reasonable questions concerning the violation of law and the context of the violation for a reasonable period. *Williams*, 472 Mich at 315. "A traffic stop is justified if the officer has an 'articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law.' " *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) (citation omitted). To determine whether a traffic stop was reasonable, we take into account the evolving circumstances facing the officer; when the stop reveals new circumstances, the officer is justified in extending the detention long enough to resolve the suspicion raised. *Id*. Furthermore, a traffic stop conducted by a police officer is lawful if a defendant violates a portion of the Michigan Vehicle Code, MCL 257.1 through MCL 257.923. *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016).

In this case, Officer Dornbos' testimony, corroborated by the video recording, reveals that he observed defendant violate MCL 257.642(b), as well as MCL 257.634(1)(d),[4] by

---

[4] MCL 257.642 provides, in pertinent part:

(1) When a roadway has been divided into 2 or more clearly marked lanes for traffic, the following rules in addition to all others consistent with this act apply:

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the operator has first ascertained that the movement can be made with safety. Upon a roadway with 4 or more lanes that provides for 2-way movement of traffic, a vehicle shall be operated within the extreme right-hand lane except when overtaking and passing, but shall not cross the center line of the roadway except where making a left turn.

(b) Upon a roadway that is divided into 3 lanes and provides for 2-way movement of traffic, a vehicle shall not be operated in the center lane except when overtaking and passing another vehicle traveling in the same direction, when the center lane is clear of traffic within a safe distance, or in preparation for a left turn, or where the center lane is at the time allocated exclusively to traffic moving in the same direction the vehicle is proceeding and the allocation is designated by official traffic control devices.

Additionally, MCL 257.634 provides in pertinent part:

(1) Upon each roadway of sufficient width, the driver of a vehicle shall drive the vehicle upon the right half of the roadway, except as follows:

* * *

(d) Upon a roadway divided into 3 marked lanes for traffic under the rules applicable on the roadway.

Finally, MCL 257.647 provides in pertinent part:

(1) The driver of a vehicle intending to turn at an intersection shall do so as follows:

(a) Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

(b) Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line in a manner as not to interfere with the progress of any streetcar, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered.

improperly using the center lane designated for left turns to follow the roadway to the right rather than making a left turn, as well as MCL 257.647(1)(a) by turning right from the left lane. Based on Officer Dornbos's specific observations, to which he testified at the hearing, he had a reasonable and articulable suspicion that defendant had violated traffic laws, and the traffic stop was justified. *Simmons*, 316 Mich App at 326. Therefore, the trial court did not err by denying defendant's motion to suppress.[5]

## D. PROPORTIONALITY OF SENTENCE

Defendant next contends that he should be resentenced because the upward departure of the sentence for operating-while-intoxicated was not proportional to the offense. We disagree.

This Court recently explained in *People v Dixon-Bey*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331499), slip op at 10:

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is an abuse of discretion. [*People v Steanhouse*, 500 Mich 450, 471; 902 NW2d 327 (2017).] In *Steanhouse*, the Michigan Supreme Court clarified that 'the relevant question for appellate courts reviewing a sentence for reasonableness' is 'whether the trial court abused its discretion by violating the principle of proportionality[.]' [*Id.*] The principle of proportionality is one in which
>
> > "a judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing. In making this assessment, the judge, of course, must take into account the nature of the offense and the background of the offender." [[*Id.* at 472], quoting *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).]
>
> Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines

---

[5] We reject defendant's contention in his Standard 4 brief that the traffic stop was somehow unlawful because Officer Dornbos allegedly violated traffic laws during the stop. Defendant fails to cite any authority for the proposition that such an allegation has any bearing on whether Officer Dornbos possessed a reasonable and articulable suspicion that *defendant* had violated traffic laws. Therefore, this argument is abandoned. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998)

recommended range.' " [*Steanhouse*, 500 Mich at 472,] quoting *Milbourn*, 435 Mich at 661.

Although the sentencing guidelines are now only advisory, they "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). The proper inquiry is thus whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Departures from the guidelines are appropriate when the guidelines do not adequately account for "important factors legitimately considered at sentencing." *Id*. Among these other factors legitimately considered are (1) the seriousness of the offense, (2) factors inadequately considered by the guidelines, and (3) factors not considered by the guidelines. *Id*. at 659-660.

In this case, with respect to defendant's conviction for operating while intoxicated, third offense, the sentencing guidelines recommended a minimum sentence of 12 to 48 months. The trial court, however, imposed a minimum sentence of 72 months. In imposing this sentence, the trial court indicated that it was aware of the advisory nature of the guidelines, and stated that the upward departure was in light of defendant's many prior convictions, and specifically defendant's many prior convictions for driving under the influence, including multiple convictions for operating under the influence, third offense.[6] The trial court further emphasized that driving under the influence was a public safety issue.

Although the guidelines calculation considered defendant's history and conduct to some extent, assessing points for his prior convictions and for his blood alcohol content during the instant offense, defendant's guidelines score does not adequately reflect the extent of defendant's historical pattern of repeatedly committing drinking-and-driving offenses.[7] Because the guidelines do not account for such a pattern of repeatedly committing this same offense and continuing to put the public at risk, the trial court properly considered these facts to determine that a departure sentence was appropriate.

In light of the fact that the instant conviction was defendant's fourth conviction with the third-offense enhancement, the amount of the departure was not disproportionate to the "seriousness of the circumstances surrounding the offense and the offender." See *Solmonson*, 261 Mich App at 659, 669-672 (concluding that the trial court did not abuse its discretion in exceeding the guidelines based upon the defendant's extensive record of drinking-and-driving convictions and that he had not been deterred by past sentences). We conclude that the trial court's sentence was reasonable under the circumstances.

---

[6] The record reflects that defendant had eight prior felony convictions and 19 prior misdemeanor convictions, including eight prior convictions for operating under the influence of liquor (OUIL) or operating while intoxicated. Of those prior convictions, four were convictions for third offense.

[7] In fact, while free on bond awaiting trial in this case, defendant committed the offenses that resulted in his arrest in the fleeing and eluding case.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant also contends that he was denied the effective assistance of counsel. Again, we disagree.

We note initially that although defendant repeatedly complained about his disagreements with defense counsel throughout the lower court proceedings, a *Ginther*[8] hearing was never held. Because no testimonial record was made in the trial court, defendant's claims of ineffective assistance of counsel are unpreserved and we review them for errors apparent on the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

"[T]o find that a defendant's right to effective assistance of counsel was so undermined that it justifies reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "The defendant must overcome the presumption that the challenged action could have been sound trial strategy." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). To show prejudice, the defendant "must show a reasonable probability that the outcome would have been different but for counsel's errors." *Id*. at 486. "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id*. at 76-77.

In this case, with respect to defendant's argument that Attorney Rick Prysock, who represented defendant at sentencing, should have filed a motion under MCR 6.431, defendant has failed to demonstrate that Attorney Prysock performed deficiently. MCR 6.431(A)(1) provides that "[a] motion for a new trial may be filed before the filing of a timely claim of appeal." MCR 6.431(B) describes when a motion for a new trial may be granted, providing that "[o]n the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." As discussed, defendant has not demonstrated that he is entitled to appellate reversal of his conviction. Because defendant has not shown that a motion for new trial would have been successful, we conclude that counsel was not ineffective for failing to file a futile motion.

With respect to defendant's assertions that attorney Dykman was ineffective, defendant has failed to demonstrate that he was prejudiced.[9] Defendant has not provided any legitimate explanation of how the outcome of his trial or sentencing would have been different had his defense attorney acted differently. There was undisputed evidence introduced at trial that defendant was driving a vehicle and had a blood alcohol content of .191, which is more than twice the legal limit. There was also undisputed evidence that defendant did not have a valid

---

[8] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[9] In reaching this conclusion, we do not imply that that defense counsel performed deficiently.

-12-

driver's license at the time. None of defendant's ineffective assistance of counsel arguments has any bearing on these facts. Defendant has not shown that a reasonable probability exists that the outcome would have been different but for the actions of counsel, and he therefore has failed to establish that he was denied the effective assistance of counsel.

We also note that defendant's claim that he was denied the effective assistance of counsel because the trial court required him to represent himself when he refused to continue with appointed counsel is without merit. Defendant relies on *People v Russell*, 471 Mich 182, 184, 192, 194; 684 NW2d 745 (2004), apparently for the proposition that a trial court may not require a defendant to proceed *in propria persona* when the defendant requests substitute appointed counsel and rejects the option of self-representation. However, *Russell* is distinguishable because the defendant in that case expressed that he was rejecting the option of self-representation, *id*. at 192, but defendant in the instant case expressed that he "[a]bsolutely" wanted to represent himself.

Defendant also raises additional issues in his Standard 4 brief, namely, that the trial court abused its discretion by not permitting defendant to again challenge the trial court's ruling on the legality of the traffic stop, by not permitting defendant to litigate during his trial the issue of whether he received effective assistance of counsel, and by ruling that he could not call Attorney Dykman as a witness at his trial. He also argues that the trial court was biased against him, that the video recording of the traffic stop introduced by the prosecutor had been altered, that the arresting officer committed traffic violations when stopping defendant, and that cumulative error denied him due process and entitles him to reversal. Our review of the record indicates that these arguments are not supported either by the record or the law. After careful review, we find these arguments to be frivolous and conclude that nothing argued by defendant supports reversal of either his convictions or sentences.

Affirmed.


/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-13-